Good morning, Your Honor. James Rosenberg on behalf of the TRNKL, and I'll keep it short, if I may. Government counsel has filed a rather well-written brief, and I hate to compliment government first line out, but it's worth mentioning. As to the issues raised as to Uzbekistan, he's right on the money. There has been resettlement. When I stepped back and looked at it after I read his brief, and then I went back to the judge's decision, and I have to agree with him. There is one primary issue in this matter that is before the court. One, not two. And the primary issue relates to the situation where we have a gentleman of Jewish descent, and I emphasize, I do not believe, based on the facts, he is a practicing Jew, or was not in the Soviet Union, was not in the Ukraine because he didn't have exposure to it. He does state, and it's in the record on the court, that he has exposed himself more to the practice of Judaism in the United States where it's available. But ethnically, he is Jewish through his mother, which is in Judaism how you trace the religion. And there is, as is suggested, a problem with Judaism in the former Soviet Union. In the Ukraine, which is now the successor in that region to the Soviet Union, and it was during Tsarist Russia, which was the predecessor of the Soviet Union ruling the same area. The primary question becomes what type of action by a government, or in this case, non-government organization, because the persecution arising after the fall of the Soviet Union, and I'm not talking about his military experience, because that government doesn't exist anymore. I'm talking about from 1991, the end of December, until the time he left. What type of persecution is necessary for purposes of asylum? And it raises a very interesting question. In almost all cases dealing with persecution of a religious nature, there's some kind of physical confrontation. Either a beating, arrest, questioning. My client was not arrested during the time period we're talking about. There's no record of him having been beaten. There's records of threats, and the threats to qualify it are not directly from the government. They're from organizations, for lack of a better phrase, I'll say they're gangs, which the government does not appear to be able to control. Even the immigration judge, Judge Bank, on page 11 of his decision states that friends and police could not help him. See, I'm with you, except I think the real issue is what kind of behavior amounts to persecution as compared to discrimination. That's a tough line, and why in this case do we have persecution as compared with discrimination? We run into the situation of persecution because the indications are from the briefs, and there is some indication in the government brief, that the government of Ukraine is capable of controlling, quote, the country. I'm not sure if that's accurate factually, but for purposes of this court let me presume it is so. There is also indications that in terms of the government's response to complaints by people of Jewish descent, the government takes no action, and that specifically is laid out in a case previously decided by the Ninth Circuit some years ago. It's a 1998 case in Korablinda. That was my case. I'm very familiar with that, but still the question is whether this is discrimination that the government's not doing anything about, or persecution. These are two different things that come up, but why in your view was the behavior that you're talking about amount to persecution as compared to discrimination? Well, it seems funny, but I'm approaching the same problem you're directing me to, but from a different angle. I'll try it from your angle for just a moment. The problem you run into is as a citizen of a country, and the United States, Ukraine, whatever country it is, you rely upon the government for purposes of protecting your civil liberties and your rights. When the government withholds that protection, is it discrimination or just persecution? I guess it depends on how far acts against you go, and that I think is the primary question is how far does one have to wait? Do they have to wait until they're beaten, or can they accept the threats as legitimate, especially when the parties appear to have the ability to fulfill them, and literally, pardon my choice of words, run like hell to get out of there before something bad happens? My client took the last set of threats for which he could get no protection seriously, and he fled to his country of birth, which he's not a citizen of, but that's another story. And exactly what do the threats menace him with? They threaten death, and they threaten death because he had witnessed, and again, I use the word gang, organized criminal activity involving the death of a third person. He witnessed a shooting. Well the bad news is if I'm a mafia guy and I threaten to kill you because you're about to become an informant, that doesn't fit into any of the protected categories. But if the government won't provide protection, where does it fit? It doesn't, that's not persecution, because it doesn't relate to any of the enumerated categories. Congress was very clear, we're going to protect you if you fall into these groups, and simply being a victim of crime doesn't fall into any of the groups that I can find. Your Honor, in Corbelinda, the court, your court, seemed to stretch a little further than that, because in that particular instance, the threats were from organizations, unless  They were. I wrote the opinion. And the government took no action to protect anybody, even after the individual But the threats were related to the ethnicity. That's the difference between Corbelinda and this case. And in this case, the threats aren't related to the ethnicity, the threats are related to simply being a witness. But if the withholding of protection is because of the ethnicity, is that not government joining in? That's a good question. It's tacit. I admit, I wish it was more on point, but it's not. So let me understand your theory. That is to say, for purposes of just sketching this out conceptually, the threat comes because he witnessed the murder, not because he's a Jew. That's my understanding. The unwillingness of the government to protect, however, is because he's a Jew. Right. That's what I'm suggesting. Yeah. And that is not inconsistent with Corbelinda, where calls were made to the police and never showed up. Yeah. But Corbelinda is different. But what's your best case that would substantiate your, you're asking us to write an opinion that says exactly what Judge Fletcher just said. Do you have any cases? What case would you like us to cite in there as authority? Your Honor, I couldn't find anything closer to Corbelinda that comes close to the issue, and I'll be honest. There is another case, it's an Iranian case, but there there's direct government action. Exactly.  It raises interesting issues, but it doesn't hit the nail on the head. I can find nothing that hits it directly on the head because I'm asking for an extension of a definition of governmental action. See, the first paragraph in Corbelinda poses the problem to your position. Corbelinda was beaten by an ultranationalist group because she was Jewish. So she immediately falls into the category and then the government didn't do anything about it. So can you clarify for me, since the theory is it's the unwillingness of the government to protect him because of his Jewishness, what is that testimony to give on that? And how did the immigration judge deal with it? The immigration, the testimony was that he was unable to get protection. He doesn't touch it in great detail in the transcript. The judge's statements on his, the judge's decision on page 11 merely states that the friends and police could not help him in the Ukraine. I don't believe the judge's decision goes in any greater depth than that. Okay. Friends and police couldn't help him. And what, and what statement did he make? Merely that he was unable to get protection. He doesn't, he didn't come out and say the police said absolutely no. Did he go, did he say, I went to the police? I honestly don't remember. I do not know if he did or not. The judge's decision would reflect that some statement of seeking police protection must have been made. Otherwise the statement on page 11 doesn't make any sense. And I'm not going to pretend I remember every fact of all the cases. Unfortunately, we all deal with too many of them. Especially this court. Thank you. But the judge found that some attempts to receive help was made and no help was given. Otherwise the sentence is pointless. And to my knowledge, the bank doesn't normally write for the sheer fun of it. That I'm sorry. Ira Bank is the immigration judge that decided. You've answered my question.  Why don't we hear from the government? I'll give you a chance to respond. Okay. Good morning. May it please the court. My name is Cindy Ferrier and I'll be representing the attorney general in this matter. According to what nurse counsel just said, um, it sounds like the only, uh, claim that he is pursuing at this point, rightly, I believe is the claim of person past persecution based upon the threat from the criminal gang, um, while he was in Ukraine. Now, um, he, first of all, actually, I think we've got it refined a little more than that. Okay. It's the failure of the police to protect him because it is Jewishness from the threat of the criminal gang because it is witnessing the crime. Right. Now, first of all, I'd just like to comment on what petitioner actually said with regard to whether he had reported the, um, criminal action to the police. The, just, just for your knowledge, the, uh, immigration judge and the parties agreed that the declaration would serve as the basis for the testimony on that, uh, with regard to all of his, um, events or his history in the Ukraine. So that means that the testimony essentially with regard to that particular event is found at page 167 of the record and specifically at, uh, at page or at paragraph 10 and 11, he speaks to the criminal. I'm sorry. I'm on page 167 of the administrative record. I don't want it. It's one eight, one 88. Okay. That's okay. Okay. So there were many criminal activities at the market. Yeah. At paragraph 10 and paragraph 11. So paragraph 10, he describes that he had witnessed the shooting and that the killer said that he would be next if anybody would know. And I assured him that I would keep my mouth shut at paragraph 11. He says that one of his customers told him that they were looking for him and that they were planning to kill him. Then he mentions that I went to my friend who worked in the police. He told me that the city was inflamed in the war between Russian and Ukrainian gangs and they would not spare me. Um, so basically to get out of the Ukraine as soon as possible. So he doesn't actually say that he went to the police. He says he spoke with a friend who was in the police, who told him that because of the gang warfare, he should just, and the, and the nature of the gang warfare in Ukraine, he should just go ahead and leave the country. So. Suggesting that if the gangs find out they'll kill both of them. Yes. Yes. But that doesn't, first that doesn't say that, that the police were unwilling or unable to protect him because of his Jewish, Jewishness. Um, rather it just, uh, it seems to suggest that this particular police officer believes that the state of the, um, affairs in Ukraine would make it so that they would be unable to protect him and he should leave the country. What do country reports, if any, tell us about this problem? The country reports that are in the record don't specifically comment with regard to criminal activity and the willingness of the, um, Ukrainian government to address claims of Jewish persons of Jewish ethnicity. It does say at page 213 of the record with regard to religious minorities, that there is anti, um, Semitism on a individual and societal basis. But it, but it also goes on to say that the central government generally discourages that. And that's, that again is just with regard to the anti-Semitism. So it doesn't make any comment as to whether the police or the government would be willing to protect, um, a Jewish person if they made a criminal complaint. Economically, it appears that he was successful in the Ukraine. Does that tell us anything one way or another? Well, it certainly seems to suggest that the claims of discrimination based upon his Jewish ethnicity don't rise to the level of persecution in that he was able to, um, complete his education, get a higher degree and in fact, obtain a job. Later, he says that he wasn't able to get the promotion that he wanted, but then he went on and opened his own personal business. So it appears that even the claims of economic discrimination don't rise to the level of persecution. Um, so basically, unless you all have any more questions about that particular event, and that seems to be what, again, what he's relying on at this point. Um, the evidence in the record, I don't believe compels the conclusion that, um, any reasonable fact finder would have to find the requisite fear of persecution here. So on that basis, the petition should be denied. Thank you. Would you like a minute in response? If I can anticipate by asking a question, what's the strongest record evidence you have to support that part of your theory that says the reason they're not protecting him is that he's Jewish, just to say, and it's written on page 188, he doesn't really say that that's the reason. Where else may we either find direct evidence or we may, we infer that the reason they're not protecting him is that he's Jewish. Your Honor, the best evidence that was presented at the trial was the evidence of an expert witness by the name of, I think his name is Ivan Kuller, or even Ivan Kuller, uh, who testified as to the situation in the Ukraine. And by the way, he is a Russian from St. Peter's, who's a professor out here, uh, who stays purportedly stays in contact with other professors within various areas of the former Soviet Union and has testified several times. And he basically said that anti-Semitism within the country is rampant. It's, it's uncontrolled. And he says the government does nothing to control it. The state department takes a different posture and says there's a problem in substance or saying there's a problem, but the government's not part of the problem, uh, as an interesting aside with the passage of time and Jews leaving countries where they have problems, the problem will be less and less because there won't be any Jews left when the Jews are gone. There is no anti-Semitism against the Jews. I guess at that time, everyone will turn on the gypsies, which unfortunately is sometimes with them. But the best evidence that was presented at the time of trial, and I don't mean to dissuade the court into other areas, uh, was the testimony of the expert. How does the, how does the expert say that the rampant anti-Semitism plays out in terms of behavior? He merely states that there is anti-Semitism in a significant degree in the Ukraine as it relates to people of Jewish ethnic background. He's being very careful not to say practicing Jews. Does he say, and this anti-Semitism plays out in beatings, fire bombings, killings, tortures, hangings.  That's part of the problem. You know, anti-Semitism is certainly a terrible problem, but again, by law, we're constrained to trying to figure out whether this is discrimination or persecution, and the only way you can really get into the persecution side is to show behavior that fits into the definition, and the expert just says there's anti-Semitism. We have anti-Semitism in the United States. Whether it's rampant or not, I don't know. Unfortunately, I am aware of the problem in the United States. I've faced it on more than one occasion. I must say that I am also Jewish. Just go back and listen to the Nixon tapes that are being played again. The conversations between Nixon and Haldeman are pretty terrifying. Yes, but directing myself back to your question, and then stopping, the record is weak, and it is weak. I'm sure the court has noted that in reviewing the transcripts and reviewing the briefs. If I had something solid to hammer, I would, rather than just playing with words, the problem we have is a lot of material by stipulation came out by way of declaration. The declaration is not terribly detailed, and it severely ties our hands. This is one of those factors where I'm grateful I'm not sitting on a bench because I have questions that would require a retrial on facts, and this court doesn't do that, but I'd submit the matter to the court. Okay, thank you very much. The case of Petrenko v. Gonzales is submitted.
judges: Trott, W. Fletcher, Restani